**L.C. CRAWFORD, Plaintiff,**

v.

**GOLD KIST, INC., a foreign corporation, Defendant.**

No. 83–778–Civ–J–14.

United States District Court, M.D. Florida, Jacksonville Division.

June 13, 1985.

---

§ 1332 in that there is complete diversity of citizenship and the amount in controversy exceeds $10,000, exclusive of interest and costs. Count I of the Amended Complaint is an action for breach of implied warranty of merchantability, pursuant to Section 672.314, Florida Statutes; Count II is an action for implied warranty of fitness for a particular purpose, pursuant to Section 672.315, Florida Statutes; Count VII is a common-law action for negligence; and Count IX is an action for breach of good faith obligation, pursuant to Section 671.-203, Florida Statutes.[2] The Court, having considered the exhibits, the briefs of counsel, the testimony at trial, and having observed the demeanor of the witnesses, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### The Purchase

1. The plaintiff is a farmer residing in Providence, Union County, Florida. He has engaged in a general farming operation since 1973 planting corn, soybeans, rye and watermelons.

2. Defendant Gold Kist, Inc. (hereinafter "Gold Kist") is a Georgia corporation with its principal place of business in Atlanta, Georgia. Gold Kist is a farm cooperative with more than one hundred retail farm outlets throughout the southeastern United States. Gold Kist is a retailer of farm products, including seed, fertilizer and insecticide. Gold Kist regularly advertises its services to its membership. It represents that its employees are knowledgeable about seed, crop chemicals, and farm practices in the areas where its stores operate.

3. On November 23, 1981, plaintiff purchased seventy-five (75) bushels of Coker

Ernest A. Sellers, James W. Prevatt, Airth, Sellers, Lewis & Decker, Live Oak, Fla., for plaintiff.

George D. Gabel, Jr., Mitchel E. Woodlief, Wahl & Gabel, Jacksonville, Fla., for defendant.

## OPINION

SUSAN H. BLACK, District Judge.

This case was tried before the Court without a jury on March 6 and 7, 1985, with closing argument on March 21, 1985. The plaintiff, a farmer, filed his Amended Complaint on November 3, 1983, seeking damages from the defendant merchant who allegedly sold him defective wheat seed.[1] This Court has jurisdiction of this action pursuant to the provisions of 28 U.S.C.

---

1. Originally, the Amended Complaint included the seed manufacturer, defendant Coker's Pedigreed Seed Company; however, all claims against the manufacturer were dismissed pursuant to the Court granting summary judgment in its favor on January 31, 1985.

Additionally, defendant Gold Kist, Inc.'s cross-claim against defendant Coker's Pedigreed Seed Company was dismissed by stipulation of the parties filed on March 6, 1985.

2. The plaintiff's actions for breach of express warranty, appearing in Count III, and for false representations, appearing in Counts IV, V, and VI, were dismissed pursuant to the Court entering a directed verdict as to those counts in favor of the defendant on March 7, 1985.

747 wheat seed from Gold Kist's Farmers' Mutual Exchange in Lake City (hereinafter "FMX"). This seed is the subject of this litigation.

4. The plaintiff first learned that the FMX in Lake City had wheat seed available for sale in talking to an employee of the FMX, Mr. Dale Dicks who was at the plaintiff's house on a social visit on approximately November 21, 1981. Mr. Dicks had been a friend of the plaintiff's family for a number of years.

5. At the time of the sale of the Coker 747 wheat seed, Mr. Dicks' duties at the FMX were to move the stock around the warehouse, clean up, do a few deliveries, and occasionally man the sales counter.

6. Through Mr. Dicks, plaintiff ordered one hundred fifty (150) bushels of Coker 797. As a favor to the plaintiff, Mr. Dicks drove plaintiff's truck to the FMX on November 23, 1981, to load the 150-bag order. Upon discovering that the FMX had only seventy-five (75) bags of Coker 797, Mr. Dicks discussed the matter with the Gold Kist assistant manager in the presence of Mr. Vernon Vinzant. Mr. Vinzant has been employed by Gold Kist as manager of the retail sales outlet at Lake City, Florida since 1972. The assistant manager instructed Mr. Dicks to phone the plaintiff and advise him of the shortage of 797 and that the only other wheat in stock was Coker 747.

7. Mr. Dicks phoned the plaintiff and told him Coker 747 was the only wheat seed that Gold Kist had available for sale at that time. The 1981 winter wheat season in Florida was described by one farmer witness as the "great wheat rush." High demand for winter wheat that year created a shortage of wheat which could be grown in Florida.

8. The plaintiff asked Mr. Dicks if Coker 747 was good seed and Mr. Dicks replied that Gold Kist only handled good products. The plaintiff was not advised by any representative of Gold Kist that Florida was outside Coker 747's zone of adaptation. *See* Findings of Fact at paragraph 25 and 26.

9. Dr. Harold Loden, an expert in plant genetics and breeding, testified that a farmer usually relies on his own and other farmers' experience.

10. The Court finds that the plaintiff relied on his own knowledge when he purchased Coker 747. Though plaintiff had farmed for eight years, the 1981 planting was his first attempt at growing wheat. Prior to purchasing the Coker 747, plaintiff had read about wheat in various trade journals, talked with other farmers regarding the suitability and production of wheat, had the year before combined wheat for other farmers in the area, and had gone to meetings held by the University of Florida Institute on Food and Agricultural Sciences, Florida Cooperative Extension Service (hereinafter "FCES") regarding the growing of wheat. In addition, the plaintiff had access to information provided by FCES and consultations with FCES experts or with the developers of the wheat seed, Coker's Pedigreed Seed Company, were available to the plaintiff and other farmers.

11. At one of the extension meetings attended by plaintiff in the fall of 1981, he received a publication of FCES entitled Agronomy Facts, dated August 25, 1981, No. 115. *See* Defendant's Exhibit No. 18 (hereinafter " '81 Agronomy Facts").

12. Prior to buying the Coker 747, plaintiff reviewed the '81 Agronomy Facts which, while not recommending that seed for Florida planting, reported successful yields in test crops. *See* Findings of Fact at paragraph 28.

13. At the time of purchase, plaintiff knew that Coker 747 was a late maturity variety of wheat seed that was too late in maturing to fit well in the double cropping system in Florida. He had read the '81 Agronomy Facts which contained that information regarding the Coker 747 prior to purchasing the wheat.

*The Planting*

14. Although the seed was purchased in November 1981, plaintiff did not plant it

until on or after December 15, 1981, due to the lack of adequate ground moisture.

15. The recommended planting season for wheat in Florida is from November 15 to December 15. FCES found that the best yields come when planted within that time. Waiting until December 15 or later to plant a late maturing variety of wheat, such as Coker 747, increased the farmer's risk of obtaining an economic yield by at least 50% because of potential problems with vernalization.

16. Vernalization is the process of changing from vegetative growth to reproductive growth. A farmer plants wheat to obtain grain or the wheat seed for sale. If the plant does not vernalize but remains in the vegetative growth stage, it simply produces leaf and does not produce the seed or grain for which it is planted. A plant vernalizes when it receives a sufficient amount of cool temperatures over a period of time which causes it to change from it's vegetative state to its reproductive state and yield. Vernalization is one of the many factors which directly affect the amount of yield a variety of wheat seed will produce. By planting late, a farmer is missing a month in the growing season and a month's exposure to cool weather.

17. The plaintiff planted three varieties of wheat seed in December: Coker 797, Coker 747 and Coker 762. All three varieties were planted in the same field in one 140-acre tract. An additional fifty (50) acres was planted solely with 747 and a 35-acre tract was planted with 747. In the field in which all three varieties were planted, 797 was planted on one side of the field, 762 was planted on the other side and 747 was planted between the two. The plaintiff followed the same cultural practices on all fields. The soils of the fields were similar in type and fertility. All fields planted by the plaintiff were subject to the same environmental conditions. All were seeded, fertilized, and sprayed at the same rates. The 797 and 762 produced on average forty-three (43) plus bushels per acre. The 747 did not produce, having failed to vernalize.

18. The defendant's witness, Dr. R.N. Barnett, is the wheat specialist for the University of Florida. Dr. Barnett testified that the only practices the plaintiff engaged in which were less than optimum were variety selection and using a late planting date. Dr. Barnett stated, however, that the late planting would not have been imprudent if the farmer delayed planting because of inadequate soil moisture.

19. On December 17, 1981, after planting the seventy-five bushels of Coker 747, the plaintiff returned to the FMX in Lake City and purchased another one hundred twenty-five (125) bushels of Coker 747. At that time, plaintiff knew that Coker 747 was the only remaining variety that the FMX had to sell.

*The Seed*

20. One of the product lines carried by Gold Kist is seed. Gold Kist merchandises a number of varieties of seed of different crops such as corn, soybeans, oats, rye, wheat, millet, and sorghums. Gold Kist distributes seed to the FMX from its seed distribution warehouse which is located at Dublin, Georgia. Gold Kist also has a seed research division and it produces its own seed for sale. It has agronomists on its staff that are periodically available to its local retail outlet managers.

21. In November 1981, Gold Kist had available for sale Coker 747 wheat seed. Coker 747 is a variety of soft winter wheat. It is a proprietary product of Coker Pedigreed Seed Company. Coker bred and developed the wheat seed and under the Plant Variety Protection Act has the exclusive right to control its reproduction and sale.

22. Gold Kist's practice as regards the sale of seed is to stock and offer for sale to farmers only seeds that are adapted to the area in which its retail store does business.

23. Florida is not within Coker 747's zone of adaptation.

24. Every variety of seed has a zone of adaptation. The zone of adaptation is the geographical area that has soil and environ-

mental conditions suited for the production of a particular variety.

25. The southern boundary of the zone of adaptation for Coker 747 is two to three hundred miles north of Union and Bradford County, Florida. The zone of adaptation for 747 was determined by its breeder, Coker Pedigreed Seed Company, after ten years of research and development. During that time Coker tested the variety in a number of different states in different years and under numerous different environmental conditions. As a result of its testing, Coker described the zone of adaptation of 747 as follows:

> It is generally adapted to the southeast piedmont, north of U.S. Highway 80 in Alabama, Georgia, Mississippi, Louisiana, Arkansas, Tennessee, Kentucky, Virginia and Maryland. *It is not recommended for planting in the southeastern coastal plains or the Gulf Coast areas where winter types do not properly vernalize during mild winters.* (emphasis added).

26. In addition to the seed manufacturer's reported zone of adaptation, FCES conducts independent variety trials for the purpose of determining the varieties that perform satisfactorily in Florida. Occasionally, the FCES recommends a variety of wheat seed to be grown in Florida which is outside the zone of adaptability, as is Coker 747. For example, the Agronomy Facts in 1983 recommended one variety of wheat seed, Coker 916, to be grown in Florida, which was outside the zone of adaptability suggested by Coker's Pedigreed Seed Company. (Tr. at 139).

27. FCES has never placed Coker 747 on its list of seeds recommended for Florida planting. At the time of the sale, however, FCES had not classified Coker 747 as unsuitable for growing in North Florida.

28. Although not recommended for planting in Florida, prior to 1981, Coker 747 had been grown in Florida and had produced an economic yield. According to the '81 Agronomy Facts, Coker 747 had yielded in a test plot in Quincy, Florida, an average of 66.2 bushels per acre when planted early, and 40.6 bushels when planted late.

29. Mr. Henderson, a farmer and retailer of farm supplies, testified that Coker 747 was a very good yielder for him in the 1980–81 season.

30. Dr. Barnett's, *supra* paragraph 18, test results for the 1981–82 growing season for Coker 747 wheat show that the Coker 747 wheat that was planted early, on November 20, 1981, had an economic yield of forty-two (42) bushels per acre. However, the Coker 747 wheat planted on December 18, 1981, about the time the plaintiff planted, showed a yield of only 6.7 bushels which Dr. Barnett characterized as a crop failure.

31. Dr. Harold Loden, an expert in plant genetics and breeding, testified that a farmer generally relies on his own and other farmer's experiences. Dr. Loden further acknowledged that the information provided in '81 Agronomy Facts would support the prudency of a seed dealer offering Coker 747 for sale.

32. In addition to selling plaintiff Coker 747 wheat, the FMX in Lake City also sold Coker 747 to several other area farmers, one of whom was Mr. Wayne Snellgrove. Mr. Snellgrove planted his wheat in mid to late November, and the Coker 747 he planted produced what appeared to be a normal yield.

## CONCLUSIONS OF LAW

### Implied Warranties

The actions based on breach of implied warranties are governed by Chapter 672, Florida Statutes, pertaining to the Uniform Commercial Code treatment of sales. *See* Section 672.105(1), Florida Statutes. The plaintiff bears the burden of proving the necessary elements of each of his asserted causes of action for breach of implied warranty. *See Hoder v. Sayet*, 196 So.2d 205, 211 (Fla. 3rd DCA 1967).

### Fitness for Particular Purpose

■ An action for breach of implied warranty of fitness for a particular purpose is

defined by Section 672.315, Florida Statutes, which states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

A plaintiff must prove that the defendant, at the time the sale was made, knew of a particular purpose for which the goods were going to be used and that the plaintiff relied upon the defendant's skill and judgment when purchasing said product. *Fletcher Company v. Melroe Manufacturing Company*, 238 So.2d 142 (Fla. 1st DCA 1970).

■ The first element of a cause of action for breach of implied warranty of fitness for a particular purpose has not been proved. The record does not demonstrate that the plaintiff ever communicated with Gold Kist regarding a particular purpose for the wheat seed. The plaintiff discussed wheat seeds generally with a family friend, Mr. Dicks, who worked in the warehouse of Gold Kist's FMX. Mr. Dicks merely told the plaintiff which variety of wheat seeds were available for sale at the FMX and offered to place the plaintiff's order. When Mr. Dicks learned he could not fill the order with the wheat seed requested by the plaintiff, the FMX assistant manager instructed Mr. Dicks to call plaintiff and ask if he would like the balance of his order filled with Coker 747. The plaintiff asked if that seed was satisfactory and Mr. Dicks replied that Gold Kist would only sell good seed. At the second sale on December 17, 1981, the plaintiff knew that only Coker 747 was available so he specifically asked for that seed.

The Court finds that at no time did the plaintiff communicate to Gold Kist that he needed the wheat seed for a particular purpose. In the absence of evidence that Gold Kist had been asked to supply a wheat seed which would satisfy a particular purpose, there can be no breach of the implied warranty of fitness for a particular purpose. *Halpryn v. Highland Insurance Company*, 426 So.2d 1050 (Fla. 3rd DCA 1983).

The plaintiff has also failed to demonstrate that he relied on Gold Kist's skill and judgment when purchasing the seed. Gold Kist's FMX is a retail outlet selling agricultural supplies. As part of its business, Gold Kist advertises that it has an expertise in the area of farming and can be relied upon to give advice on farming products and methods. However, as noted above, the plaintiff did not communicate with Gold Kist and draw upon its expertise. The plaintiff has merely established that the advertised expertise was available, not that it was either drawn upon or relied on in purchasing Coker 747.

In fact, the record demonstrates that, rather than relying on Gold Kist, the plaintiff independently researched the farming of wheat prior to his purchase of Coker 747. *See* Findings of Fact at paragraphs 10–13. From the information he gathered, including the experiences of other farmers who had grown wheat and the reports of the FCES, the plaintiff selected other types of wheat seed than Coker 747 to plant. He bought Coker 747 only when the other types were unavailable. The Court finds the one resource the plaintiff did not rely on in deciding which seed to plant was Gold Kist.

■ The plaintiff contends, however, that, despite what his awareness may have been, he had a reasonable expectation that Gold Kist would only sell wheat seed adapted to the Florida area and that he relied upon that reasonable expectation. If Gold Kist were to sell a non-adapted variety, the plaintiff reasons, there was an attendant duty to disclose this fact to the plaintiff. The Court finds that while it would have been preferable for Gold Kist to discuss Coker 747's limited zone of adaptation with the plaintiff, there was no such duty.

Gold Kist made available for sale various types of wheat seed, including Coker 747, a variety not adapted for planting in Florida.

Although not recommended by either Coker or the FCES, Coker 747 had realized successful yields when planted in Florida. Coker 747's limitations as well as its successes in the state were documented and disseminated to both suppliers and customers of farm products. During the wheat rush of 1981 when wheat seed was scarce, several farmers, including the plaintiff, chose to buy Coker 747, knowing its limitations, and some realized successful yields.

The Court finds in this case that Gold Kist made available for sale a wheat seed variety that, while riskier than others on the Florida market, had the potential for successful yields. Since Gold Kist has demonstrated that Coker 747 had that potential, the focus turns to the individual in the best position to evaluate the variables and assume the risk of planting the seed— the farmer. Having the farmer bear the loss from the failure of a risky but potentially harvestable wheat seed recognizes the realities of farming. The farmer controls the crop and the method of its planting. In the practice of his profession, he must familiarize himself with the seed he plants and the variables such as weather, time of planting, soil condition, and the farmer's own skills, which directly affect the seed's yield. *Cf. Bickett v. W.R. Grace & Company,* 12 U.C.C.Rep.Serv. 629, 643 (W.D.Ky.1972). The individual farmer, in the exercise of his skill and judgment in the open marketplace, must choose the seed he believes will realize the most successful yield in light of these variables. If the seed he purchases has a reasonable potential for a successful yield, whether it does so or not is dependent on the myriad choices he has made.

### Merchantability

The plaintiff's cause of action for breach of an implied warranty of merchantability, raised in Count I of the Complaint, is based on Section 672.314(2)(a) and (c), Florida Statutes, which states in part:

(1) Unless excluded or modified (s. 672.-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

(2) Goods to be merchantable must be at least such as:

(a) Pass without objection in the trade under the contract description; and

. . . .

(c) Are fit for the ordinary purposes for which such goods are used.

■ Coker 747 was purchased by the plaintiff for the ordinary purpose of growing wheat. The fact that Coker 747 is a late maturity variety of wheat seed not recommended for planting in Florida does not support a conclusion that Coker 747 is not fit for the ordinary purpose of raising wheat. As discussed, the experiences of other farmers as well as the test plantings conducted by Dr. Barnett and FCES demonstrate Coker 747 was fit for the ordinary purpose of growing wheat with the potential for an economic yield. The Court finds the Coker 747 purchased by the plaintiff merchantable as defined by Section 672.-314(2)(c), Florida Statutes.

The Court further finds that Coker 747 passed without objection in the trade. Mr. Henderson, so testified; he sold and planted the seed and would do so again. Dr. Barnett testified that, while the dealer should caution a farmer as to Coker 747's limitations when planted in Florida, selling Coker 747 is acceptable. Dr. Loden, an expert in plant genetics and breeding relied on the fact that Coker 747 could be grown in Florida in determining that a seed dealer could prudently sell Coker 747. In light of the testimony and the previously discussed statistic of the FCES published in the '81 Agronomy Facts, the Court finds the Coker 747 merchantable as defined by Section 672.314(2)(a), Florida Statutes.

### Negligence

The plaintiff alleges in Count VII of the Amended Complaint that Gold Kist breached its duty as a seed retailer to "sell only those seed which can reasonably be expected to produce a commercially reasonable and harvestable crop, given the climatological conditions prevalent in the sales area."

*Id.* at paragraph 70. The plaintiff has not cited to any statute or case law establishing that such a duty exists.

While a seed dealer may be held liable for negligence when he fails to comply with the requirements of the Federal and Florida Seed Laws, no such violations have been alleged. *See e.g., Agricultural Services Association, Inc. v. Ferry-Morse Seed Company, Inc.,* 551 F.2d 1057 (6th Cir.1977); *Hoskins v. Jackson Grain Company,* 63 So.2d 514 (Fla.1953). Otherwise, a tort duty to furnish a buyer with an economically effective product as opposed to a safe one can arise when expressly agreed to by the parties or when implied by law. "[T]he duty [however] arises under the law of contract, and not under tort law." *Monsanto Agricultural Products Company v. Edenfield,* 426 So.2d 574 (Fla. 1st DCA 1983). The Court finds that the plaintiff has failed to establish an independent cause of action based on negligence. Any implied duty based on the contractual relationship between this vendor/vendee would be governed by the Uniform Commercial Code provisions discussed above. Even if the duty as defined by plaintiff existed, the Court finds that, as discussed above, Coker 747 "can reasonably be expected to produce a commercially reasonable and harvestable crop" in Florida; therefore, the Court finds the duty has not been breached.

### Good Faith Obligation

Finally, in Count IX of the Amended Complaint, the plaintiff states that Gold Kist's "unconscionable conduct in selecting and recommending the use of Coker 747 by [plaintiff], when Gold Kist knew that Coker 747 was not suitable for use in Florida ..." states a cause of action under Section 671.-203, Florida Statutes. Section 671.203 states, "Every contract or duty within this code [Florida U.C.C.] imposes an obligation of good faith in its performance or enforcement."

As discussed, the plaintiff made only limited attempts to communicate with Gold Kist when the seed was purchased. Prior to purchasing Coker 747, the plaintiff had independently investigated various wheat seeds and, in fact, had selected other varieties to plant. He purchased Coker 747 when wheat seed was scarce and the other varieties were unavailable. In the plaintiff's research, he obtained and reviewed the '81 Agronomy Facts which, though highlighting Coker 747's limitations, included its successful yields in Florida. The plaintiff did not rely on Gold Kist's "selection" or "recommendation" of Coker 747— Gold Kist made none. The plaintiff, having the necessary information before him, decided on Coker 747 when no other seed was available. He then determined to plant late in the season knowing Coker 747 was a late maturing variety of wheat seed. The Court finds no evidence of a lack of good faith on the part of Gold Kist or of a failure to deal fairly with the plaintiff.

The Court finds for the defendant and directs the Clerk of the Court to enter Judgment for the defendant.